UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY WADKINS,

               Plaintiff,                  Case No. 2:16-cv-11312
                                            District Judge Laurie J. Michelson

v.                                    Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.

_____/

## REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMAND (DE 11) and DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 13)

**I.     RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary

judgment and remand (DE 11), **DENY** Defendant's motion for summary judgment

(DE 13), and **REMAND** the matter to the Commissioner of Social Security for

further proceedings consistent with this Report and Recommendation.

**II.     REPORT**

       Plaintiff, Amy Wadkins, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for social security disability insurance

(DI) benefits.  This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment and remand (DE 11), the Commissioner's cross motion for summary judgment (DE 13), Plaintiff's reply (DE 14), and the administrative record (DE 6).

### A.   Background

Plaintiff claims her ability to work is limited by multiple sclerosis, excessive fatigue and disequilibrium syndrome.  (R. at 129.)  Plaintiff filed her application for benefits on June 20, 2013, alleging that she has been disabled since April 29, 2013, at age 39.  (R. at 114-115.)  Plaintiff's applications were denied and she sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 69-79, 85-86.)  ALJ Thomas Walters held a hearing on October 27, 2014, at which Plaintiff was represented by counsel.  In his November 7, 2014 opinion, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 30-60, 16-29.)

Plaintiff sought review of the hearing decision.  On February 11, 2016, the Appeals Council denied Plaintiff's request for review, and ALJ Walter's decision became the Commissioner's final decision.  (R. at 1-7.)  Plaintiff then timely commenced the instant action.

### B.   Plaintiff's Medical History

Plaintiff's combined medical records span the period from October 19, 2012 through October 21, 2014. (R. at 160-461 [Ex. 1F-9F].)  The approximately 300

pages of medical records are mostly comprised of treatment records, but these also include the January 23, 2014 neuropsychological evaluation of Robert J. Fabiano, Ph.D. (R. at 293-297) and the July 23, 2014 medical source statement of Jayne H. Ward, D.O. (R. at 298.)  All of these records were before the ALJ at the time of his November 7, 2014 decision (R. at 28-29) and will be discussed as necessary below.[1]

### C.    Hearing Testimony

Plaintiff and vocational expert (VE) Toni McFarland testified at the October 27, 2014 hearing.  (R. at 30-60.)  As Plaintiff's credibility and the ALJ's Step 5 analysis are not at issue before this Court, I will forego a summary of this testimony here and only cite it as necessary below.

### D.    The Administrative Decision

ALJ Walters issued his unfavorable decision on November 7, 2014.  (R. at 16-29.)  At **Step 1** of the sequential evaluation process,[2] he found that Plaintiff has

---

[1] The record includes Dr. Ward's March 2, 2015 and April 2, 2015 post-hearing notes, which the Appeals Council considered but then excluded because they did "not affect the decision about whether [Plaintiff was] disabled beginning on or before November 7, 2014."  (R. at 2, 8-13.)

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

not engaged in substantial gainful activity since April 29, 2013, the alleged onset

date.  (R. at 21.)  At **Step 2**, he found that Plaintiff has the following severe

impairments:  multiple sclerosis with fatigue, joint pain, balance issues, and

memory loss.  (R. at 21-22.)  At **Step 3**, he found that Plaintiff does not have an

impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments.  (R. at 22.)  Prior to **Step 4** of the

sequential process, the ALJ determined that Plaintiff has the residual functional

capacity ("RFC")[3] to perform the *exertional* limitations of sedentary work

(including specific lifting, carrying, walking, standing, and sitting restrictions),

with additional *environmental* (cannot work around moving machinery or

unprotected heights) and *non-exertional or mental* (can only follow simple

---

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

repetitive work instructions) limitations.  (R. at 22-24.)  At **Step 4**, the ALJ

concluded that Plaintiff is unable to perform any past relevant work.  (R. at 24.)  At

**Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ

concluded that there are jobs that exist in significant numbers in the national

economy that Plaintiff can perform.  (R. at 25.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Furthermore, the claimant "has the ultimate burden to establish an entitlement to

benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d

1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997));

*see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security

as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.     Analysis

Plaintiff takes issue with the ALJ's assessment of her multiple sclerosis at

Steps 3 and 4 and further alleges that the ALJ's determination violated SSR 96-6p.

(DE 11 at 6, 11-17.)  The Commissioner opposes Plaintiff's motion, asserting that

substantial evidence supports the Commissioner's decision.  (DE 13 at 1, 3, 14-25.)

As the Court finds that one of Plaintiff's Step 3 Listing arguments warrants

remand, it will forego discussion of Plaintiff's other arguments.

In his Step 2 finding that Plaintiff's severe impairments include multiple

sclerosis with fatigue, joint pain, balance issues, and memory loss, the ALJ

discussed:

- Plaintiff's April 29, 2013 to May 2, 2013 hospitalization, including a brain MRI that revealed "white matter . . . changes," a cervical spine MRI that was "consistent with focus of demyelinating disease," and the discharge diagnoses of "demyelinating change in MRI brain and MRI cervical[,]" "dizziness," "facial numbness R>L," and "anemia."  (*See* R. at 193-260);

- Treatment by MSU Clinical Center, including Michael Flink, D.O., Ph.D.'s diagnosis of multiple sclerosis - seemingly the notes from May 2013 – and the November 15, 2013 cervical spine MRI, which was "consistent with demyelinating disease." (*See* R. at 280-290, 299-368, and 370-456);

- The January 23, 2014 neuropsychological evaluation of Robert J. Fabiano, Ph.D., including observation of "diminished motor speed and dexterity bilaterally."  (R. at 293-297);

- The October 8, 2014 brain MRI, which revealed "one new nonenhancing, subcentimeter lesion . . . within the left posterior parietal lobe[,]" and "cerebellar tonsillar ectopia."  (R. at 369); and

- The October 21, 2014 notes of Dr. Ward, who recommended "[t]rial of gabapentin at bedtime to assist with pain and sleep dysfunction[.]"  (R. at 457-461).

(R. at 21-22.)  Then, at Step 3, without further explanation, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments . . . ."  (R. at 22.)

As such, there can be no reasonable dispute that the ALJ's decision is devoid of an express Step 3 discussion.  Plaintiff claims that the ALJ "omits consideration of material evidence, thereby skipping an entire step in the sequential evaluation process . . . ."  (DE 11 at 11-12.)  *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) ("Ultimately, the ALJ erred by failing to analyze Reynolds' physical condition in relation to the Listed Impairments.  Put simply, he skipped an entire step of the necessary analysis.  He was required to assess whether Reynolds met or equaled a Listed Impairment (such as the one above), but did not do so.").  The Commissioner sidesteps this deficiency by arguing that Plaintiff has the burden of proof at Step 3, has "pointed to no evidence" in support of Listing

8

11.09, and that "any error . . . in failing to articulate findings at step three is harmless." (DE 13 at 14-15.)

I disagree with the Commissioner. Here, the Court should conclude that the ALJ's omission of a Step 3 discussion was an error that may well have been harmful. To be clear, Plaintiff inaccurately states that the ALJ omitted "any consideration" of Dr. Fabiano's "significant physical neurological findings[,]" – such as "the severe range of impairment across tasks of motor speed and dexterity bilaterally[,]" or "clearly diminished motor speed and dexterity bilaterally." (DE 11 at 6, 8, 11-12, 295-296.) In fact, the ALJ expressly cited Dr. Fabiano's motor speed and dexterity finding at Step 2, in addition to citing the finding of "a relatively normal test profile across areas of intellectual, memory and cognitive functioning[,]" within the Step 4 RFC determination. (*See* R. at 22-24, 296.)[4] Therefore, even if Dr. Fabiano's January 23, 2014 neuropsychological evaluation came into existence after the September / October 2013 disability determination by state agency psychological consultant Dr. Pinaire and state agency medical

---

[4] The Court cannot help but notice that the ALJ cited Exhibits 1F, 2F, 4F, 6F, 7F, 8F and 9F at Step 2 (R. at 21-22) and Exhibits 2F, 4F, 5F, 6F, 8F, and 9F within the Step 4 RFC determination (R. at 22-24). Of course, that is not to say that each page of those exhibits was expressly cited. However, it seems that the only exhibit not expressly cited by the ALJ was the November 6, 2013 record of Dr. Ward (R. at 291-292 [Ex. 3F]). Even so, the Court assumes Exhibit 3F was concurrent with the U.S. Department of Labor form upon which the ALJ expressly relies within the Step 4 RFC determination. (R. at 23, 345-348 [Ex. 6F], 450-453 [Ex. 8F].)

consultant Dr. Choi – which expressly considered Listing 11.09, it remains that the ALJ *did* consider Plaintiff's "impairments in motor speed and dexterity."  (S*ee* DE 11 at 12, R. at 73).

Nonetheless, the Court should disagree that "any error the ALJ made in failing to articulate findings at step three is harmless."  (DE 13 at 15.)  Preliminarily, the SSA Listing upon which Plaintiff relies requires "*[d]isorganization of motor function* as described in 11.04B[.]"  Listing 11.09(A) (effective December 15, 2004 through September 28, 2016) (emphasis added).[5] (DE 11 at 14, DE 14 at 2.)[6]  Listing 11.04B requires "[s]ignificant and persistent *disorganization of motor function* in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)."  *Id*. (effective December 15, 2014 through September 28, 2016) (emphasis added).  Finally, "persistent *disorganization of motor function*" requires:

> . . .paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological

---

[5] There are two other subsections of Listing 11.09, neither of which seems to apply here, one relating to "visual or mental impairment," and another relating to "significant, reproducible fatigue of motor function."  *See* DI 34131.013 Neurological Listings from 12/15/04 to 09/28/16

[6] By comparison, the Commissioner refers to the current version of Listing 11.09. (*See* DE 13 at 15; https://www.ssa.gov/disability/professionals/bluebook/11.00-Neurological-Adult.htm#11_09.)

impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands and arms.

Listing 11.00C (effective December 15, 2014 through September 28, 2016) (emphasis added).

"At step three of the evaluation process, it is the burden of the claimant to show that he meets or equals the listed impairment." *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 727-728 (6th Cir. 2004). "When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Thacker*, 93 F. App'x at 728; *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) ("And even if these reasons failed to support the ALJ's step-three findings, the error is harmless, because Forrest has not shown that his impairments met or medically equaled in severity any listed impairment . . . .").

Plaintiff argues that "disorganization of motor function" is established by: **(a)** the November 6, 2013 U.S. Department of Labor (USDL) form signed by Dr. Ward, which explained that Plaintiff had multiple sclerosis with fatigue, dizziness, cognitive slowing, feeling of imbalance, ongoing treatment with disease modifying therapy, and also explained that Plaintiff's condition causes "episodic flare-ups periodically preventing the employee from performing his/her job functions[,]" (R.

11

at 345-348, R. at 450-453); **(b)** the January 23, 2014 neuropsychological

evaluation by Dr. Fabiano, whose sensory-motor examination revealed "severe

range of impairment across tasks of motor speed and dexterity bilaterally[,]" and

whose summary indicated "clearly diminished motor speed and dexterity

bilaterally[,]" (R. at 293-297); and, **(c)** the July 23, 2014 letter from Dr. Ward,

which acknowledges "multiple disabling symptoms including cognitive

dysfunction, fatigue, dizziness and gait instability[,]" such that she is "completely

disabled from full time work[,]" (R. at 298).  (DE 11 at 12, 14; DE 14 at 2.)

The Commissioner contends that Plaintiff cannot show that she met or

equaled Listing 11.09.  "For a claimant to show that his impairment matches a

listing, it must meet *all* of the specified medical criteria. An impairment that

manifests only some of those criteria, no matter how severely, does not qualify."

*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also Smith-Johnson v. Comm'r of*

*Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) ("the claimant must point to

specific evidence that demonstrates he reasonably could meet or equal every

requirement of the listing.").  For the most part, the Commissioner makes this

argument by referencing the ALJ's Step 4 RFC determination, although the

government does point to the ALJ's Step 2 acknowledgment of what seems to be

Dr. Flink's May 10, 2013 notes (R. at 286) and Dr. Fabiano's January 23, 2014

report (R. at 296).  (R. at 21-24, DE 13 at 16-19.)

However, the Court "'may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result.'"  *Gross v. Comm'r of Soc. Sec.*, No. 2:16-CV-10365, 2017 WL 1151099, at *4, __ F.Supp.3d __ (E.D. Mich. Mar. 28, 2017) (quoting *Pollaccia v. Comm'r of Soc. Sec.*, No. 09-cv-14438, 2011 WL 281044, at *6 (E.D. Mich. Jan. 6, 2011)); *see also Wilson v. Commissioner of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (requiring an appellate record that would "permit meaningful review" of the ALJ's application of the rules).  In the instant case, as noted above, the ALJ only provided a bolded, Step 3 conclusion without any express Step 3 discussion.  (R. at 22.)  It is unclear on what the ALJ based his Step 3 conclusion.

Nor does the remainder of the ALJ's opinion make this connection.  As the above definitions indicate, "disorganization of motor function" is a key to satisfying Listing 11.09.    Yet, the Court does not see a mention of this phrase within the ALJ's Step 2 or Step 4 RFC determination.  I acknowledge that the ALJ made observations that discounted certain pieces of evidence or cast doubt upon the conclusion that Plaintiff was disabled;[7] however, as it concerns "motor

---

[7] For example:  **(a)** the ALJ's assignment of "little weight" to Dr. Choi's October 1, 2013 opinion that Plaintiff could perform a "range of light work[,]" (R. at 23, 72, 75); **(b)** the ALJ's assigned of "little weight" to Dr. Ward's November 6, 2013 opinion that Plaintiff was incapacitated from May 2013 and continuing indefinitely and/or Dr. Ward's July 23, 2014 notes that Plaintiff was "completely disabled from

function," the Undersigned only sees the ALJ's undeveloped references at Step 2 to Dr. Fabiano's notes regarding "diminished *motor speed* and dexterity bilaterally" and, within the Step 4 RFC determination, to Dr. Ward's October 21, 2014 notes that Plaintiff's *motor strength* was "graded 5/5 proximally and distally in all 4 limbs."  (R. at 22, 296 (emphasis added); R. at 24, 403, 447, 460.)  These passing references to "motor speed" and "motor strength" do not provide the Court with a foundation upon which to conclude that Plaintiff's multiple sclerosis did not meet or medically equal "disorganization of motor function" as defined by Listing 11.09.  Consequently, the Court should not be inclined to liken this case to one in which discussion in another portion of the opinion cures an error at Step 3.  *See*, *e.g.*, *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006).

All of this is not to say that Plaintiff's impairments satisfy Listing 11.09 or, for that matter, any other listing.  It is only to say that the ALJ's opinion does not provide an "accurate and logical bridge" to instruct the Court of his reasoning with respect to his Step 3 determination.  *Gross v. Comm'r of Soc. Sec.*, 2017 WL 1151099, at *4.  This error is not harmless, as "the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary."

---

full time work[,]" (R. at 23-24, 347, 452, 298); and **(c)** the ALJ's consideration of Dr. Ward's October 13, 2014 notes that there was "no significant change" from the November 15, 2013 to the October 8, 2014 brain MRIs.  (R. at 22, 23, 24, 333-336, 431-434).

*Reynolds*, 424 F. App'x at 416. The process and evidence upon which the ALJ relied in rejecting Listing 11.09 – let alone any other listed impairment - are not clear to this subsequent reviewer. As such, Plaintiff is entitled to remand.

### G. Conclusion

As more thoroughly explained above, I conclude that the ALJ's Step 3 determination is supported by less than substantial evidence. Accordingly, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary judgment and remand (DE 11), **DENY** Defendant's motion for summary judgment (DE 13), and **REMAND** the case pursuant to 42 U.S.C. § 405(g) to the Commissioner for further proceedings consistent with this Report and Recommendation. Upon remand, the ALJ should be directed to re-evaluate the Step 3 findings - with special emphasis on Listing 11.09 - as well as the Step 4 RFC and Step 5 findings, as necessary, and to assure their consistency.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 11, 2017                          s/Anthony P. Patti
                                               Anthony P. Patti
                                               UNITED STATES MAGISTRATE JUDGE

### **Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on July 11, 2017, electronically and/or by U.S. Mail.

s/Michael Williams_____
Case Manager for the
Honorable Anthony P. Patti
